IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FIRST SERVICE CREDIT UNION,<br><br>*Plaintiff*,<br><br>v.<br><br>SERVICE 1ST FEDERAL CREDIT UNION,<br><br>*Defendant*. | Civil No. 4:25-cv-1668<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff First Service Credit Union ("Plaintiff" or "FSCU") files this Complaint for Declaratory Judgement against Defendant Service 1st Federal Credit Union ("Defendant" or "Service 1st") alleging as follows:

## NATURE OF SUIT

1. This is an action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking a declaration that FSCU's conduct does not infringe Defendant's alleged SERVICE 1ST trademark (the "SERVICE 1ST Mark" or "Defendant's Mark") or constitute unfair competition under the Lanham Act, 15 U.S.C. § 1051 et. seq., or violate Texas trademark or unfair competition laws.

2. This action arises out of Defendant's demands set out in its March 14, 2025 letter to FSCU. Defendant demands, among other things, that FSCU cease and desist from using and seeking to register at least its FIRST SERVICE CREDIT UNION mark (the "FIRST SERVICE Mark") and withdraw at least its U.S. Trademark Application Serial No. 98/264,805 for the FIRST SERVICE Mark in connection with goods and services in International Classes 009, 035, 036, and 041. Defendant threatened to commence legal action against FSCU if it did not comply with

---

**COMPLAINT FOR DECLARATORY JUDGMENT**                                                               **PAGE 1**

Defendant's demands. FSCU denies that it has infringed or otherwise violated any rights of Defendant.

## THE PARTIES

3. FSCU is a not-for-profit financial cooperative registered in Texas. It has a principal place of business at 16430 Park Ten Place, Houston, Texas 77084.

4. On information and belief, Defendant Service 1st is a United States not-for-profit financial cooperative with a principal corporate office located at 1985 Montour Blvd., PO Box 159, Danville, Pennsylvania 17821.

## JURISDICTION, AND VENUE

5. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the trademark laws of the United States, 15 U.S.C. § 1051 et seq.

6. This court has jurisdiction over the subject matter of this action pursuant to at least 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), 1338(a) and (b), 2201, and 2202, and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

7. Personal jurisdiction over Defendant is proper in this District at least because Defendant purposefully directed activities at this District, has availed itself of the rights and benefits of the laws of Texas, and has conducted business at least relating to its enforcement of its rights under the SERVICE 1ST Mark in Texas and in this District. Furthermore, FSCU's claims arise out of or relate to Defendant's activities in this District. For example, Defendant directed its March 14, 2025 cease and desist letter to FSCU in Texas and in this District.

8. Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in this District and has directed its enforcement activities at this District, and a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

**I.   DEFENDANT'S BUSINESS AND "SERVICE 1ST" MARK**

9. Defendant, headquartered in Danville, Pennsylvania, is a United States not-for-profit financial cooperative serving communities in Pennsylvania.

10. On information and belief, Defendant operates thirteen branch locations all located in central and northeastern Pennsylvania.

11. On information and belief, Defendant operates with field-of-membership restrictions tied to specific regions. Defendant's customer base is limited to (1) individuals and their family members who live, work, worship, attend school in, or operate a business or other legal entity located in qualified census tracts in certain Pennsylvania counties (i.e., Carbon County, Columbia County, Luzerne County, Lycoming County, Montour County, Northumberland County, Sullivan County, Union County, or Wyoming County) and (2) select employee groups of businesses located in Pennsylvania.

12. On information and belief, Defendant has used the SERVICE 1ST Mark in connection with the provision of credit union services.

13. Defendant is the owner of record of U.S. Trademark Registration No. 3,090,528, for the SERVICE 1ST Mark ("Defendant's Registration").

14. Defendant's Registration designates only the services of "credit unions" in International Class 036. Defendant did not claim exclusive rights to use or otherwise seek to register the SERVICE 1ST Mark in connection with any services (other than credit union services) in International Class 36 when applying for Defendant's Registration.

15. Defendant's Registration does not designate any goods and services in International Classes 009, 035, or 041. Defendant did not claim exclusive rights to use or otherwise seek to

register the SERVICE 1ST Mark in connection with any goods and services in International Classes 009, 035, or 041 when applying for Defendant's Registration.

16. The Trademark Snap Shot Publication Stylesheet for Defendant's Registration identifies "SERVICE FIRST" as a pseudo mark for "SERVICE 1ST."

17. During prosecution of the application for Defendant's Registration, the Examiner for the U.S. Patent and Trademark Office ("USPTO") conducted a search for similar marks in the USPTO trademark search system. The Examiner's search revealed that, as of at least October 14, 1997, there were already 6,061 total marks containing the word "SERVICE," 5,917 total marks containing the word "FIRST" or "1ST," and 108 total marks combining "SERVICE" with "FIRST" or "1ST." According to the Examiner's search, 92 of those 108 combination marks were in International Class 036.

18. Although Defendant purports to use the SERVICE 1ST Mark in connection with the provision of credit union services, there are other credit unions and/or banks that use marks containing "SERVICE," "FIRST," or a combination of the two words.

19. For example, on information and belief, Service First Federal Credit Union is a not-for-profit member-owned financial institution that has been serving Sioux Falls, South Dakota, and the surrounding communities since 1934. *See* https://www.servicefirstfcu.org.

20. As another example, on information and belief, Service 1st Credit Union is a credit union operating in Greenville, Texas, that has been serving members since 1954. *See* https://www.s1cu.org.

21. In addition, on information and belief, Servis1st Bank, established in 2005, is a commercial bank with a presence across Alabama, Florida, Georgia, North Carolina, South Carolina, Tennessee, and Virginia. *See* https://www.servisfirstbank.com.

## II. FSCU'S BUSINESS AND "FIRST SERVICE" MARK

22. Established in 1977 by fifteen employees of Brown & Root, FSCU is a member-owned financial institution based in Houston, Texas. It operates thirteen branch locations primarily across the Greater Houston area, including branches in neighborhoods such as Katy, Spring, Cypress, Sugar Land, and The Woodlands.

23. FSCU is committed to delivering personalized financial solutions and fostering community development in the Greater Houston area. To that end, FSCU offers a comprehensive range of financial products and services tailored to meet the diverse needs of its members, with a mission to enhance members' financial well-being. Those products and services include at least personal savings and checking accounts, business banking services, loans, credit cards, and investment and wealth management.

24. FSCU owns common law and statutory rights in and to several trademarks and service marks and related Federal registrations and pending applications, including at least U.S. Trademark Registration No. 3,145,360; U.S. Trademark Registration No. 4,521,668; U.S. Trademark Registration No. 4,521,672; U.S. Trademark Registration No. 5,284,777; U.S. Trademark Application Serial No. 98/257,116; U.S. Trademark Application Serial No. 98/257,130; U.S. Trademark Application Serial No. 98/264,805; and U.S. Trademark Application Serial No. 99/037,452.

25. For example, FSCU is the owner of U.S. Trademark Application Serial No. 98/264,805 ("the '805 Application"), filed with the USPTO on November 10, 2023, for the mark FIRST SERVICE CREDIT UNION (the "FIRST SERVICE Mark").

26. The '805 Application lists the following goods and services:

- **International Class 009** for "Downloadable mobile application for use by others for use in financial data processing services, namely, loan application processing and account management"

- **International Class 035** for "Payroll management services"

- **International Class 036** for "Financial services, namely, banking and credit union services in the field of personal and commercial banking services; personal and commercial checking and savings account services, credit card issuing services, credit and debit card transaction services, lending services, namely, commercial lending services, personal lending services, automotive and vehicle lending services, electronic and digital banking services via a global computer network, issuance of cash letters being multiple checks and check processing services, and electronic funds transfer services; Providing currency exchange services via automatic teller machines (ATM); financial services, namely, wealth management services in the field of education planning, retirement planning, insurance planning, investment planning, investment consulting services and financial portfolio management; insurance services, namely, underwriting, issuance and administration of life insurance, homeowners insurance, accidental death and dismemberment (AD&D) insurance, and automobile insurance"

- **International Class 041** for "Providing educational workshops hosted by financial experts for credit union members"

27. FSCU has used at least the FIRST SERVICE Mark in commerce, including in Texas and on the Internet, continuously since at least as early as July 2004.

28. Since at least as early as July 2004, FSCU has used at least the FIRST SERVICE Mark in commerce, including in Texas and on the Internet, in connection with the promotion of the services in International Classes 035 and 036 above.

29. Since at least as early as January 2011, FSCU has used at least the FIRST SERVICE Mark in commerce, including in Texas and on the Internet, in connection with the promotion of the services in International Class 041 above.

30. Since at least as early as October 2012, FSCU has used at least the FIRST SERVICE Mark in commerce, including in Texas and on the Internet, in connection with the promotion of the good in International Class 009 above.

31. On June 17, 2024 and June 18, 2024, during prosecution of the '805 Application, the USPTO Examiner ran searches for potentially similar marks. The Examiner ran the following searches as her sixth, seventh, and eighth searches:

| # | Search | Total Marks |
|---|--------|-------------|
| 6 | CM:/.*(f|ph)[iy]r[sz]t.*/ AND LD:true | 8871 |
| 7 | CM:/.*[sz][iey]rv[iey][csz].*/ AND LD:true | 17315 |
| 8 | 6 AND 7 | 178 |

32. On information and belief, when an Examiner searches the combined mark field ("CM") in the USPTO trademark search system, the search combines multiple trademark categories (including the word mark, pseudo mark, translation, and transliteration fields) into a single searchable field.

33. On information and belief, search #6 would have identified live marks in which the word mark field or pseudo mark field contained "FIRST," search #7 would have identified live marks in which the word mark field or pseudo mark field contained "SERVICE," and search #8 would have identified live marks in which the word mark field or pseudo mark field contained both "FIRST" and "SERVICE."

34. According to the Examiner's search, as of at least June 18, 2024, there were already 8,871 live marks containing the word "FIRST" or a word that sounds like "FIRST," 17,315 live marks containing the word "SERVICE" or a word that sounds like "SERVICE," and 178 live marks containing both.

35. On information and belief, the sixth, seventh, and eighth searches above would have hit on the pseudo mark field (i.e., "SERVICE FIRST") for Defendant's Registration.

36. Nonetheless, the Examiner did not cite any rights of Defendant (including the SERVICE 1ST Mark and Defendant's Registration) as a basis for refusing FSCU's '805 Application to register the FIRST SERVICE Mark under Section 2(d) of the Lanham Act.

37. On information and belief, the Examiner did not cite Defendant's Registration because the Examiner did not find a likelihood of confusion between the SERVICE 1ST Mark and the applied-for FIRST SERVICE Mark in the '805 Application.

38. The '805 Application for the FIRST SERVICE Mark was approved for publication on November 23, 2024, and subsequently published in the Trademark Official Gazette on December 17, 2024.

39. On or about February 11, 2025, FSCU's U.S. Trademark Application Serial No. 98/257,130 ("the '130 Application") for the mark FIRST SERVICE CU (the "FIRST SERVICE CU Mark") was also was approved for publication and allowed for registration on the Principal Register for goods and services in International Classes 009, 035, 036, and 041 after no opposition. The Examiner likewise did not cite any right of Defendant (including the SERVICE 1ST Mark and Defendant's Registration) as a basis for refusing FSCU's '130 Application to register the FIRST SERVICE CU Mark for the exact same goods and services covered by the '805 Application under Section 2(d) of the Lanham Act.

### III.  EXISTENCE OF AN ACTUAL CONTROVERSY

40. There is an actual controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

41. On or around March 14, 2025, FSCU received a letter from Defendant objecting to FSCU's use of the FIRST SERVICE Mark, claiming that the use constitutes trademark infringement and unfair competition. The letter also alleged that FSCU is violating Defendant's

rights in the SERVICE 1ST Mark by applying for the '805 Application in connection with goods and services in International Classes 009, 035, 036, and 041.

42. Defendant's letter demanded that FSCU "[e]xpressly abandon all pending applications to register and voluntarily cancel all existing USPTO or state registrations" for the FIRST SERVICE Mark, including but not limited to withdrawing the '805 Application. The letter further demanded that FSCU "[c]ease and desist from all planned, existing and future use of" the FIRST SERVICE Mark "and any other designations likely to cause confusion with Service 1st's trademarks." Defendant did not identify which other of FSCU's marks it contends are "likely to cause confusion" and have therefore cast a cloud over each of FSCU's live or pending marks, including without limitation the FIRST SERVICE CU Mark and the '130 Application.

43. Defendant's letter also demanded that FSCU "destroy any materials in its possession and control bearing any designation likely to cause confusion" with Defendant's trademarks, including the SERVICE 1ST Mark.

44. Defendant's letter further demanded that FSCU provide Defendant with sufficient information (i.e., accounting) to determine "the full amount of FSCU's gross revenue and profits derived from the use of the [FIRST SERVICE] Mark."

45. Defendant's letter alleged that the goods and services in the '805 Application are "identical" to the services in Defendant's Registration but did not acknowledge that Defendant's Registration does not extend to other services in International Class 036 or any goods or services in International Classes 009, 035, or 041. Nor did the letter acknowledge the differences in the credit union services designated in Defendant's Registration and the other non-credit union services described in International Class 036 under the '805 Application.

46. Defendant's letter also did not acknowledge the sheer number of marks containing "SERVICE," "FIRST," or a combination of the two words that have coexisted in commerce or on the Principal Register of the USPTO for decades, including at least the marks described in paragraphs 17–21 and 34 above.

47. Furthermore, the letter did not identify any instances of actual confusion between Defendant's Mark and the FIRST SERVICE Mark.

48. Nonetheless, in its letter, Defendant stated that, if FSCU did not comply with its demands, Defendant would "take all steps necessary to protect its valuable intellectual property rights, without further notice to FSCU," including but not limited to filing suit to "seek injunctive relief and recover monetary damages."

49. A true and correct copy of Defendant's letter is attached to this Complaint as **Exhibit A**.

50. Defendant's accusations of infringement and unfair competition set out in its letter are without basis at least because consumers are not likely to be confused by FSCU's use of the FIRST SERVICE Mark.

51. As a first example, on information and belief, there is no evidence of actual confusion despite at least 20 years of concurrent use.

52. At a minimum, Defendant has not identified any instances of actual confusion.

53. As a second example, given at least Defendant's geographic restrictions for membership, there is de minimis market interface between FSCU and Defendant.

54. At least because FSCU and Defendant operate in different geographic regions, no injury and no damages to Defendant are probable.

55. As a third example, consumers are less likely to be confused given the large number of similar marks in use for similar goods and services. As explained above, the USPTO's trademark records show many registrations for marks containing "SERVICE" and "FIRST," including marks in International Class 036 used for banking and financial services, and more common law marks may exist.

56. Indeed, during prosecution of the '805 Application and the '130 Application, the USPTO Examiner did not cite Defendant's Registration as a basis for rejection on a likelihood of confusion after conducting a search of the USPTO's official records.

57. As a fourth example, on information and belief, consumers of credit union products and services are not casual or uninformed customers. Rather, they are generally sophisticated consumers who exercise a high degree of care and diligence, particularly for products and services which involve significant financial commitments or long-term obligations. On information and belief, such consumers are accustomed to closely evaluating competing financial institutions, including their service offerings and geographic locations, as part of the decision-making process.

58. As a fifth example, on information and belief, the parties' respective marks FIRST SERVICE CREDIT UNION and SERVICE 1ST are different in visual appearance, connotation, and sound.

59. As a sixth example, on information and belief, the SERVICE 1ST Mark is not a famous mark within the meaning of the Lanham Act.

60. Based on the foregoing, a justiciable controversy exists between FSCU and Defendant as to the scope of Defendant's trademark rights and whether FSCU's conduct constitutes trademark infringement or unfair competition under the Lanham Act, or unfair competition under Texas or other state law.

61. In view of Defendant's threats and allegations, FSCU needs and is entitled to a judicial declaration that FSCU's conduct does not infringe Defendant's alleged trademark rights in the SERVICE 1ST Mark or constitute unfair competition under federal or state law. Absent a declaration to this effect, Defendant will continue to wrongfully allege that FSCU's goods and services advertised or sold under the FIRST SERVICE Mark infringe Defendant's alleged trademark rights, thereby causing FSCU irreparable injury and damage.

## COUNT I: DECLARATORY JUDGMENT OF
## NO TRADEMARK INFRINGEMENT UNDER FEDERAL LAW

62. FSCU repeats and realleges paragraphs 1 through 61 hereof, as if fully set forth herein.

63. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that FSCU has not infringed and is not infringing Defendant's alleged trademark rights in the SERVICE 1ST Mark.

64. A judicial declaration is necessary and appropriate so that FSCU may ascertain its right to continue using the FIRST SERVICE Mark, and any other of FSCU's marks that Defendant contends are "likely to cause confusion," in the manner set out in this Complaint.

65. A judicial declaration is necessary and appropriate so that FSCU may maintain all pending applications and seek to register its rights in and to the FIRST SERVICE Mark, and any other of FSCU's marks that Defendant contends are "likely to cause confusion," on the Principal Register of the USPTO in the manner set out in this Complaint.

66. A judicial declaration is necessary and appropriate so that FSCU may retain, and is not required to destroy or cease use of, any materials in its possession and control bearing the

FIRST SERVICE Mark, or any other of FSCU's marks that Defendant contends are "likely to cause confusion" with Defendant's trademarks, including the SERVICE 1ST Mark.

67. FSCU is entitled to a declaratory judgment that its use of the FIRST SERVICE Mark, and any other of FSCU's marks that Defendant contends are "likely to cause confusion," is not likely to cause consumer confusion and does not infringe, either directly or indirectly, any trademark rights of Defendant under 15 U.S.C. § 1114(1) or 15 U.S.C. § 1125(a).

68. FSCU is entitled to a declaratory judgment that it may maintain all pending applications and seek to register the FIRST SERVICE Mark and any other of FSCU's marks that Defendant contends are "likely to cause confusion," on the Principal Register of the USPTO under 15 U.S.C. § 1501 et seq.

69. FSCU is entitled to a declaratory judgment that it may retain, and is not required to destroy or cease use of, any materials in its possession and control bearing the FIRST SERVICE Mark, or any other of FSCU's marks that Defendant contends are "likely to cause confusion" with Defendant's trademarks, including the SERVICE 1ST Mark.

70. FSCU is entitled to a declaratory judgment that Defendant is not entitled to any information or accounting of FSCU's gross revenue or profits derived from the use of the FIRST SERVICE Mark and any other of FSCU's marks that Defendant contents are "likely to cause confusion" under 15 U.S.C. § 1114(1) or 15 U.S.C. § 1125(a).

### COUNT II: DECLARATORY JUDGMENT OF NO UNFAIR COMPETITION UNDER FEDERAL OR STATE LAW

71. FSCU repeats and realleges paragraphs 1 through 70 hereof, as if fully set forth herein.

72. As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment that FSCU has not engaged in and is not engaging in unfair competition with Defendant.

73. A judicial declaration is necessary and appropriate so that FSCU may ascertain its right to continue using the FIRST SERVICE Mark, and any other of FSCU's marks that Defendant contends are "likely to cause confusion," in the manner set out in this Complaint.

74. FSCU is entitled to a declaratory judgment that its use of the FIRST SERVICE Mark, and any other of FSCU's marks that Defendant contends are "likely to cause confusion," and its conduct described herein does not constitute unfair competition under 15 U.S.C. § 1125(a) or under Texas or other state law.

## DEMAND FOR JURY TRIAL

75. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, FSCU demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, FSCU prays for judgment and requests that the Court find in its favor and against Defendant. FSCU respectfully requests that the Court enter preliminary and final orders, declarations, and judgments against Defendant as are necessary to provide FSCU with the following relief:

    a. A judgment that FSCU has not infringed and is not infringing, either directly or indirectly, any valid and enforceable trademark rights of Defendant under 15 U.S.C. § 1114(1) or 15 U.S.C. § 1125(a);

    b. A judgment that FSCU may maintain all pending applications and seek to register the FIRST SERVICE Mark and any other of FSCU's marks that Defendant

contends are "likely to cause confusion," on the Principal Register of the USPTO under 15 U.S.C. § 1501 et seq.

  c. A judgment that FSCU may retain, and is not required to destroy or cease use of, any materials in its possession and control bearing the FIRST SERVICE Mark, or any other of FSCU's marks that Defendant contends are "likely to cause confusion" with Defendant's trademarks, including the SERVICE 1ST Mark.

  d. A judgment that Defendant is not entitled to any information or accounting of FSCU's gross revenue or profits derived from the use of the FIRST SERVICE Mark and any other of FSCU's marks that Defendant contents are "likely to cause confusion" under 15 U.S.C. § 1114(1) or 15 U.S.C. § 1125(a);

  e. A judgment that FSCU has not engaged in and is not engaging in unfair competition in violation of 15 U.S.C. § 1125(a) or in violation of Texas or other state law;

  f. An order restraining and enjoining Defendant and each of its officers, directors, agents, counsel, servants, employees, and all of persons in active concert or participation with any of them from alleging, representing, or otherwise stating that FSCU's use of the FIRST SERVICE Mark infringes any rights of Defendant in the SERVICE 1ST Mark, constitutes unfair competition, or is unlawful under Texas or other state law;

  g. An order retraining and enjoining Defendant and each of its officers, directors, agents, counsel, servants, employees, and all of persons in active concert of participation with any of them from taking any action to oppose or cancel (or filing any document to oppose or cancel) any registrations and any pending applications for the FIRST SERVICE Mark and any other of FSCU's marks that Defendant contends are

"likely to cause confusion," on the Principal Register of the USPTO under 15 U.S.C. § 1501 et seq.

      h.      An order declaring FSCU the prevailing party and this case as exceptional, and awarding FSCU its reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a);

      i.      An award for all of FSCU's fees, expenses, and costs associated with this action; and

      j.      An award for such other and further relief as this Court deems just and proper.

Dated: April 10, 2025

Respectfully submitted,

/s/ Jamie H. McDole

**Jamie H. McDole**, *Attorney-in-Charge*
  Texas Bar No. 24082049
  SDTX Federal Bar No. 1626626
  jmcdole@winstead.com
**WINSTEAD PC**
2728 N. Harwood Street, Suite 500
Dallas, Texas 75201
Tel.: (214) 745-5400
Fax: (214) 745-5390

**Nadia E. Haghighatian**
  Texas Bar No. 24087652
  SDTX Federal Bar No. 2598876
  nhaghighatian@winstead.com
**WINSTEAD PC**
600 W. 5th Street, Suite 900
Austin, Texas 78701
Tel.: (512) 370-2800
Fax: (512) 370-2850

*Attorneys for Plaintiff*
*First Service Credit Union*