**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

FIRST SERVICE CREDIT UNION,

     Plaintiff,

v.

SERVICE 1ST FEDERAL CREDIT
UNION,

     Defendant.

Civil Action No.: 4:25-cv-1668-KPE

**DEFENDANT SERVICE 1ST FEDERAL CREDIT UNION'S MOTION TO DISMISS
THE COMPLAINT FOR LACK OF PERSONAL AND SUBJECT MATTER
JURISDICTION**

## TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT ........................................................................................ 1

   a.    Personal Jurisdiction ...................................................................................... 1

   b.    Subject Matter Jurisdiction ........................................................................... 1

II.   NATURE AND STAGE OF PROCEEDINGS ..................................................... 2

III.  FACTUAL BACKGROUND ................................................................................. 3

   a.    Party Background and Pre-Suit Communications ......................................... 3

   b.    Declaratory Judgment Action ....................................................................... 4

   c.    Covenant Not to Sue ..................................................................................... 5

IV.   ARGUMENT ....................................................................................................... 9

   a.    Legal Standards .............................................................................................. 9

     i.    Personal Jurisdiction ................................................................................ 9

     ii.   Subject Matter Jurisdiction .................................................................... 10

   b.    Legal Argument ........................................................................................... 11

     i.    This Court Lacks Personal Jurisdiction Over Defendant .................... 11

     ii.   This Court Lacks Subject Matter Jurisdiction ..................................... 12

V.    CONCLUSION ................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013)............................................................................................ *passim*

*AXTS, Inc. v. F-1 Firearms, LLC*,
    2020 U.S. Dist. LEXIS 196506 (S.D. Tex. 2020) ...................................................11

*Boyd Tech, Inc. v. Boyd Tech, Inc. (Fla.)*,
    2018 U.S. Dist. LEXIS 124205 (S.D. Tex. 2018) ...................................................12

*DNH, LLC v. In-N-Out Burgers*,
    381 F.Supp.2d 559 (E.D. La. 2005)........................................................................12

*Eatertainment, Inc. v. Archbold*,
    2007 U.S. Dist. LEXIS 106340 (S.D. Tex. 2007) .............................................10, 12

*Freudensprung v. Offshore Tech. Servs.*,
    379 F.3d 327 (5th Cir. 2004) ....................................................................................9

*Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*,
    921 F.3d 522 (5th Cir. 2019) .......................................................................9, 10, 11

*Nursery Decals & More, Inc. v. Neat Print, Inc.*,
    2023 U.S. App. LEXIS 19826 (5th Cir. 2021) ............................................... *passim*

*Vantage Trailers, Inc. v. Beall Corp.*,
    567 F.3d 745 (5th Cir. 2009) ..................................................................................10

**Rules**

Fed. R. Civ. P. 12.........................................................................................................2

Fed. R. Civ. P. 12(b)(2)..............................................................................................12

Defendant Service 1st Federal Credit Union ("Defendant" or "Service 1st") hereby moves to dismiss Plaintiff First Service Credit Union's ("Plaintiff" or "FCSU") declaratory judgment complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(2). This Court lacks personal jurisdiction over Defendant, and Defendant's covenant not to sue renders Plaintiff's complaint moot as there is no longer a case or controversy.

## I.      SUMMARY OF ARGUMENT

### a.      Personal Jurisdiction

Defendant is a federal credit union that operates brick and mortar locations exclusively in Pennsylvania. Defendant does not have any locations in any other state, let alone Texas. Indeed, Plaintiff acknowledges this in its complaint: "on information and belief, Defendant operates thirteen branch locations all located in central and northeastern Pennsylvania."  Plaintiff also acknowledges that Defendant's customer base is restricted to individuals who "live, work, worship, attend school in, or operate a business or other legal entity" in certain Pennsylvania counties and "select employee groups of business located in Pennsylvania."

It is no surprise, therefore, that Plaintiff bases its allegation of personal jurisdiction solely on a cease-and-desist letter that Defendant sent Plaintiff, which is located in Texas. However, per the case law in this Circuit, a cease-and-desist letter is insufficient to confer jurisdiction in the target state.  As such, this Court lacks personal jurisdiction over Defendant, and this action should be dismissed on this ground alone.

### b.      Subject Matter Jurisdiction

Plaintiff's complaint seeks a declaratory judgment that Plaintiff's use of the FIRST SERVICE CREDIT UNION trademark does not infringe or unfairly compete with Defendant's SERVICE 1ST trademark. Plaintiff rushed to file this declaratory judgment action while the parties were in the midst of settlement discussions, and refuses to dismiss it despite Defendant's

offer of a comprehensive covenant not to sue that covers all the claims in the complaint. Indeed, Plaintiff has known for months that Defendant does not object to Plaintiff's previous or current use of the FIRST SERVICE CREDIT UNION trademark, a position that Defendant formalized in a written covenant. As such, there is no case or controversy and Plaintiff's lawsuit is moot.

Weeks ago, Defendant sent Plaintiff a detailed covenant in which Defendant agrees not to sue Plaintiff in any trademark action for any previous or current uses of the FIRST SERVICE CREDIT UNION trademark, whether those uses are in the past, present, or future. Defendant's proposed covenant is materially indistinguishable from covenants that the Supreme Court and Fifth Circuit held sufficient to dismiss declaratory judgment actions in trademark matters. Plaintiff nevertheless rejected that covenant with no explanation, and refuses to dismiss its complaint unless Defendant agrees to its proposed covenant that covers not just previous or current uses, but also any *future*, unknown uses, regardless of whether such future uses align with previous or current uses. Plaintiff's proposed covenant also includes numerous irrelevant trademarks that Defendant has never objected to. Plaintiff attempts to extract more from the covenant than it could receive in this action, leaving Defendant no choice but to bring this Motion.

Simply put, there is no case or controversy as a matter of law because Defendant does not object to the conduct that forms the basis of this declaratory judgment action. Defendant therefore moves the Court to dismiss the Complaint for lack of subject matter jurisdiction.

## II.   NATURE AND STAGE OF PROCEEDINGS

In these proceedings, Plaintiff seeks a declaratory judgment that its use of the FIRST SERVICE CREDIT UNION trademark does not constitute trademark infringement or unfair competition. Defendant submits this Motion to Dismiss as its initial responsive pleading pursuant to Fed. R. Civ. P. 12.

### III.    FACTUAL BACKGROUND

#### a.    Party Background and Pre-Suit Communications

Defendant is a federal credit union that has offered credit union services using the SERVICE 1ST trademark since at least as early as 1994. Dkt. No. 1, ¶ 13. Defendant operates brick and mortar locations exclusively in Pennsylvania. *Id.* at ¶ 10. Defendant's customer base is restricted to individuals who "live, work, worship, attend school in, or operate a business or other legal entity" in certain Pennsylvania counties and "select employee groups of business located in Pennsylvania." *Id*. at ¶ 11. Defendant owns a federal trademark registration for SERVICE 1ST. *Id*. at ¶ 13.

Plaintiff is a credit union founded in 2004. *Id.* at ¶ 27. Plaintiff operates brick and mortar locations exclusively in Texas. *Id.* at ¶ 28. Plaintiff filed federal trademark applications for FIRST SERVICE CREDIT UNION and related marks in November 2023, which published for opposition in December 2024. *Id.* at ¶ 2.

On March 14, 2025, Defendant sent a letter (the "Letter") to Plaintiff alleging infringement of Defendant's trademark rights. Declaration of Matthew P. Frederick ("Frederick Decl."), Ex. A, B. On March 21, Defendant requested a call with Plaintiff to discuss the Letter following a voicemail left by Plaintiff's counsel. *Id*. at Ex. C. Having not heard back, Defendant followed up with Plaintiff on March 31. *Id.* Plaintiff finally responded on April 1, requesting clarification as to whether the existence of the call with Defendant "will or will not be used to argue jurisdiction or venue outside of Texas." *Id.* Defendant clarified that "[t]he fact that the conversations were held [would not] be used [for jurisdictional purposes]. Any information learned during the conversations, however, is fair game," thus reserving Defendant's rights to rely upon pertinent information learned during a call, rather than the existence of the call itself.

*Id.* Defendant followed up regarding the proposed call in an April 3 email, an April 8 email, and an April 9 voicemail, none of which were responded to. *Id*. at Ex. C, ¶ 6.

### b.   Declaratory Judgment Action

Rather than respond to Defendant's numerous correspondence, either to schedule a call or to request further assurances regarding jurisdiction and venue, Plaintiff filed this Declaratory Judgment Action on April 10, 2025. Dkt. No. 1. On April 15, the parties held a call to discuss settlement terms. Frederick Decl., ¶ 8. On this call, Defendant indicated that despite what was set forth in the Letter it did not oppose Plaintiff's previous or current use in commerce of the FIRST SERVICE trademark – i.e., Plaintiff's brick and mortar locations in Texas – and Plaintiff should therefore dismiss the Declaratory Judgment Action and the parties should instead focus on Defendant's forthcoming opposition to Plaintiff's FIRST SERVICE CREDIT UNION trademark applications at the Trademark Trial and Appeal Board (the "Opposition").  *Id.* Counsel for Plaintiff agreed to discuss that information with its client and get back to Defendant. *Id*. In the meantime, Defendant filed the Opposition on April 16. Frederick Decl., Ex. F.

Defendant did not hear back from Plaintiff until June 18, over two months after the parties' call. Frederick Decl., Ex. G. That communication did not address Defendant's proposal. *Id.* Instead, Plaintiff requested that Defendant's counsel agree to accept service of the complaint on behalf of Defendant. *Id.* On Friday, June 20, Defendant replied, indicating that instructions regarding service would be sent early the following week. *Id.* Rather than wait for such instructions, Plaintiff personally served the complaint at Defendant's place of business on

Tuesday, June 24.[1] Frederick Decl., ¶ 12. Meanwhile, Plaintiff had still not responded to Defendant's settlement proposal from the call over two months prior.

      c.      **Covenant Not to Sue**

On June 26, Plaintiff and Defendant conducted their required discovery conference for the Opposition. Frederick Decl., ¶ 13. During this conference, Defendant proposed offering Plaintiff a formal covenant not to sue to dispose of this action. *Id.* Also during this call, Defendant requested that Plaintiff consent to a 45-day extension of time to respond to the declaratory judgment complaint while the parties negotiated the covenant. *Id.* Plaintiff refused, and consented only to a 14-day extension. *Id*. at Ex. H.

Defendant sent Plaintiff a draft covenant not to sue on July 2 (the "First Draft"). Frederick Decl., Ex. I. In the First Draft, Defendant agreed in pertinent part as follows:

> Service 1st hereby irrevocably covenants that at no time will it, its successors or its assigns, directly or indirectly, alone or by, with, or through others, cause, induce, or authorize, or voluntarily assist, participate, or cooperate in the commencement, maintenance, or prosecution of any action or proceeding of any kind or nature whatsoever before any United States federal or state courts (including, but not limited to, any suit, complaint, grievance, demand, claim, or cause of action) against FSCU, any of its Affiliates or any of their past or present directors, officers, employees, successors, assigns, customers, manufacturers, distributors, licensees, or other transferees based upon assertion of trademark infringement of the Service 1st Trademark by FSCU's use of the FSCU Trademark in connection with the FSCU Goods and Services in the FSCU State of Operation. For the avoidance of doubt, this covenant does not apply to any expansion of FSCU's use of the FSCU Trademark beyond the FSCU State of Operation, or any trademark other than the FSCU Trademark.

*Id.* The "FSCU Trademark" was defined as the FIRST SERVICE CREDIT UNION trademark that Defendant initially objected to in the Letter, while the "FSCU State of Operation" was defined as Texas, where all of Plaintiff's previous and current credit unions are located. *Id.* The

---

[1] Plaintiff's deadline to serve the complaint was not until July 9, over two weeks later.

First Draft covers all of Plaintiff's uses of the FIRST SERVICE CREDIT UNION trademark as of the Effective Date of the First Draft (i.e., on brick-and-mortar credit unions in Texas). *Id.*

Two weeks later on July 15, Plaintiff sent an email attaching a revised draft covenant not to sue (the "Second Draft"). Frederick Decl., Ex. J. In the July 15 email, Plaintiff indicated that it did "not believe the scope of Service 1st's proposed covenant is sufficient to address the claims in Service 1st's March 14, 2025 letter or FSCU's declaratory judgment action." *Id.* However, Plaintiff provided no additional detail or explanation for that assertion. The Second Draft significantly broadened the scope of Defendant's proposed covenant in a number of ways. First, the Second Draft added trademarks that Defendant had never challenged, including numerous irrelevant marks that had not been raised in the Letter, the Declaratory Judgment Action, or any communications between the parties.[2]

Second, Plaintiff's revised covenant was not limited to previous or current uses of the relevant trademark. Rather, it encompassed *any* expansion of Plaintiff's use of the FIRST SERVICE trademarks in the future, including geographic expansion:

---

[2] *See e.g.*, BANK LIKE YOU OWN THE PLACE... BECAUSE YOU DO! (Reg. No. 4521668); FOR YOU NOT PROFIT (Stylized) (Reg. No. 5284777); BONGO (Serial No. 99/037,452).

> Service 1st for and on behalf of itself, its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities, hereby unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against FSCU or any of its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities and all customers of each of the foregoing (whether direct or indirect), on account of any possible cause of action based on or involving trademark infringement, dilution, unfair competition, false designation of origin, or any similar claim under federal, state, or common law in the United States relating to the SERVICE 1ST Mark and any similar federal, state, or common law marks, based on the FSCU Marks and any similar federal, state, or common law marks, regardless of whether such marks are used in commerce before or after the Effective Date of this Covenant.

Frederick Decl., Ex. J.

Defendant sent Plaintiff an email attaching a further revised draft covenant not to sue on July 18 (the "Third Draft"). Frederick Decl., Ex. K. In the email, Defendant explained that the Second Draft was unduly broad in light of the inclusion of unrelated trademarks and the inclusion of future, unknown uses of the trademarks. *Id*. Defendant also observed that the Second Draft was extremely similar to covenants that rendered trademark actions moot in *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) and *Nursery Decals & More, Inc. v. Neat Print, Inc.*, 2023 U.S. App. LEXIS 19826 (5th Cir. 2021), except Plaintiff had stricken the phrase limiting those covenants to "current and/or previous use" of the subject trademarks. *Id*. Defendant explained that the Second Draft would "prevent Service 1st from asserting its trademark rights against FSCU in any scenario, including those wherein FSCU expands its geographic scope into Service 1st's own areas of operation." *Id*. Defendant then proposed a new covenant—the "Third Draft"—which revised the language of Plaintiff's proposed Second Draft so that it was materially indistinguishable from the scope of the covenants in *Already* and *Nursery Decals*,

- 7 -

including revising the Second Draft to include the "current and/or previous" language from

*Already* and *Nursery Decals*. Defendant included the following redline comparing Plaintiff's

Second Draft and Defendant's Third Draft in the July 18 email:

> Service 1st for and on behalf of itself, its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities, hereby unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against FSCU or any of its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities and all customers of each of the foregoing (whether direct or indirect), on account of any possible cause of action based on or involving trademark infringement, dilution, unfair competition, or false designation of origin, or any similar claim under federal, state, or common law in the United States relating to the SERVICE 1ST Mark and any similar federal, state, or common law marks, based on the current and/or previous use of the FSCU Marks and any similar federal, state, or common law marks for the FSCU Goods and Services, regardless of whether such marks are used use occurs in commerce before or after the Effective Date of this Covenant.

*Id.* at Ex. K. In the email attaching the Third Draft, Defendant requested a call with Plaintiff

early the following week in light of the upcoming responsive pleading deadline. *Id*. Plaintiff did

not respond to Defendant's email attaching the Third Draft. *Id*. at Ex. L. Defendant inquired as to

the status of the covenant on July 24, and Plaintiff indicated that it was still reviewing the Third

Draft. *Id.* During the parties' Rule 26(f) conference on July 25, Defendant again raised the

covenant issue. Frederick Decl. ¶ 19. Plaintiff replied that it was still not prepared to discuss the

Third Draft. *Id.* Defendant asked for an extension of time to respond to the complaint given

Plaintiff's inability to promptly engage in negotiations over the covenant. *Id*. Plaintiff refused to

either agree to an extension or discuss the covenant substantively, stating again without

- 8 -

explanation that "the draft covenant Service 1st proposed on July 18 is wholly insufficient and we do not agree with it." *Id*. at Ex. L.

Together with this Motion, Defendant files an executed covenant not to sue dated July 2, 2025 (the "Covenant") which is identical to the Third Draft offered to Plaintiff on July 18. Frederick Decl., Ex. M.

## IV.   ARGUMENT

### a.   Legal Standards

#### i.   Personal Jurisdiction

"A federal court sitting in diversity may assert jurisdiction if (1) the state's long-arm statute allows it; and (2) exercising jurisdiction would not violate the Due Process Clause of the Fourteenth Amendment." *Halliburton Energy Servs. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539 (5th Cir. 2019) (internal citation omitted). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry reduces to only the federal due process analysis." *Id*.

"Federal due process requires a plaintiff to prove two things. First, the plaintiff must show that the non-resident defendant purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state. Second, the plaintiff must show that the exercise of jurisdiction . . . does not offend traditional notions of fair play and substantial justice." *Id*. (internal citations omitted).

"There are two types of minimum contacts: those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Id*. A court may exercise general jurisdiction when the defendant has "continuous and systematic contacts with the forum." *Freudensprung v. Offshore Tech. Servs*., 379 F.3d 327, 343 (5th Cir. 2004). For a

defendant's contacts to be "systematic and continuous," the contacts must be extensive; the test

is difficult to meet. *Eatertainment, Inc. v. Archbold*, 2007 U.S. Dist. LEXIS 106340, *7 n. 1

(S.D. Tex. 2007) (*citing Submersible Sys., Inc. v. Perforadora Central, S.A. de C.V.,* 249 F.3d

413, 419 (5th Cir. 2001).

Specific jurisdiction applies when a non-resident defendant "has purposefully directed its

activities at the forum state and the litigation results from alleged injuries that arise out of or

relate to those activities." *Halliburton Energy Servs.*, 921 F.3d at 539-40 (internal citation

omitted). Sending a cease-and-desist letter to a recipient in the forum state does not amount to

purposeful availment sufficient to support specific jurisdiction. *Id*. at 542.

### ii.      Subject Matter Jurisdiction

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and

'Controversies.' One component of the case-or-controversy requirement is standing, which

requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and

redressability." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). "To

assess standing in declaratory judgment suits, federal courts have traditionally applied a two-part

test that required the declaratory plaintiff to show: (1) an explicit threat or other action by the

[holder of a patent or trademark], which creates a reasonable apprehension on the part of the

declaratory plaintiff that it will face an infringement suit, and (2) present activity which could

constitute infringement or concrete steps taken with the intent to conduct such activity." *Id*.

"[A]n 'actual controversy' must exist not only at the time the complaint is filed, but through all

stages of the litigation." *Already*, 568 U.S. at 90 (internal quotations omitted). Thus, "[a] case

becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—

'when the issues presented are no longer live or the parties lack a legally cognizable interest in

- 10 -

the outcome.'" *Id.* at 91 (quoting *Murphy v. Hunt*, 455 U. S. 478, 481, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982)).

A covenant not to sue that covers "current and/or previous" uses of a trademark—whether those uses occur in the past, present, or future—is sufficient to strip standing from a declaratory judgment plaintiff. *Already*, 568 U.S. at 102 (holding that a covenant not to sue on any current and/or previous footwear product designs rendered moot a declaratory judgment action involving trademark infringement and unfair competition); *see also Nursery Decals*, 2023 U.S. App. LEXIS 19826, *2  (holding that a covenant that was "nearly identical" to that in *Already* was sufficient to render declaratory judgment claims moot); *AXTS, Inc. v. F-1 Firearms, LLC*, 2020 U.S. Dist. LEXIS 196506, *7 (S.D. Tex. 2020) ("Because Plaintiff's Covenant Not to Sue covers all of Plaintiff's claims and the previously identified 100 charging handles, the Court dismisses all of Plaintiff's claims as moot.").

### b. Legal Argument

#### i. This Court Lacks Personal Jurisdiction Over Defendant

In its complaint, Plaintiff admits that 1) Defendant operates brick and mortar locations exclusively in Pennsylvania, and 2) Defendant's customer base is restricted to individuals who "live, work, worship, attend school in, or operate a business or other legal entity" in certain Pennsylvania counties and "select employee groups of business located in Pennsylvania." Dkt. No. 1, ¶¶ 10, 11. Indeed, Plaintiff makes just a single factual allegation regarding Defendant's contacts with Texas: Defendant sent a cease-and-desist letter to Plaintiff in Texas. *Id*. at ¶ 7. This falls well short of the "extensive" contacts required to support general jurisdiction. And, as a matter of law, the Letter is insufficient to confer specific jurisdiction.  *See Halliburton Energy Servs.*, 921 F.3d at 542 ("Ironshore's letters, even if they threatened litigation, are not enough to

show minimum contacts with Texas."); *see also Boyd Tech, Inc. v. Boyd Tech, Inc. (Fla.)*, 2018 U.S. Dist. LEXIS 124205, *22 (S.D. Tex. 2018) ("the mere act of asserting [trademark] rights through a cease-and-desist letter does not subject Defendants to specific jurisdiction in the forum to which the letter was sent"); *Eatertainment, Inc.*, 2007 U.S. Dist. LEXIS 106340, at *8-*9 ("Even drawing all reasonable inferences in favor of Plaintiff, [multiple cease and desist letters, phone calls, and the delivery of the Notice of Opposition] are insufficient to support this Court's exercise of personal jurisdiction over Defendants"). *DNH, LLC v. In-N-Out Burgers*, 381 F.Supp.2d 559, 564 (E.D. La. 2005) (noting that courts have repeatedly held that cease-and-desist letters are insufficient to confer specific personal jurisdiction in patent and copyright cases because principles of fair play and substantial justice afford a party latitude to inform others of its rights without subjecting itself to suit in a foreign forum) (citing cases).

The relevant case law makes clear that this Court does not have personal jurisdiction over Defendant. Plaintiff acknowledges in its complaint that Defendant only has physical locations in Pennsylvania, it only seeks customers that are located in Pennsylvania or are employees of Pennsylvania businesses, and Defendant's only contact directed to Texas was sending a letter to enforce its trademark rights. Suing Defendant in this forum violates both the "purposeful availment" requirement and the "traditional notions of fair play and substantial justice" requirement.  As such, this case should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

### ii.    This Court Lacks Subject Matter Jurisdiction

Even if the Court had personal jurisdiction over Defendant (which it does not), this action still requires dismissal for lack of subject matter jurisdiction.

The Covenant disposes of any case and controversy between the parties. In the Covenant, Defendant agrees that it will not bring "any possible cause of action based on or involving

trademark infringement . . . [or] unfair competition . . . under federal, state or common law in the United States relating to the SERVICE 1ST mark . . . based on the current or previous use of the FSCU Marks[3] for the FSCU Goods and Services.[4]" This is the same scope as the initial cease and desist letter Defendant sent to Plaintiff in March, which is what gave rise to this action and forms the sole basis for the Court's subject matter jurisdiction. And this is the same scope as Plaintiff's declaratory judgment complaint, which seeks a declaration of 1) no trademark infringement, and 2) no unfair competition based on Plaintiff's use of the FIRST SERVICE CREDIT UNION trademark. Because the Covenant dispels of any definite and concrete dispute between the parties, there is no Article III standing for this action. *See Already*, 568 U.S. at 91 ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'") (citation omitted).

It appears that Plaintiff's only issue with the Covenant is its "current or previous use" language, which was Plaintiff's only substantive deletion from the *Already* and *Nursery Decals* covenants that Plaintiff used as a starting point for its proposed Second Draft. Plaintiff has not explained why that language is problematic, or why this situation is any different than the situations addressed by the *Already* or *Nursery Decals* courts. Indeed, as Defendant explained to Plaintiff weeks ago, the language in Defendant's proposed Covenant is materially indistinguishable from the covenants that disposed of the court's declaratory judgment jurisdiction in the *Already* and *Nursery Decals* cases. The *Already* covenant not to sue, reproduced below, obliged Nike:

---

[3] Defined as the FIRST SERVICE trademark, with or without "Credit Union," as used by FSCU as of the effective date.
[4] Defined as the credit union services offered by FSCU as of the effective date.

> to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against [Already] or any of its [successors or related entities and their customers], on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law in the United States [sic] relating to the NIKE Mark based on the appearance of any of [Already]'s **current and/or previous footwear product designs**, and any colorable imitations thereof, regardless of whether that footwear is produced, distributed, offered for sale, advertised, sold, or otherwise used in commerce before or after the Effective Date of this Covenant.

*Nursery Decals.*, 2023 U.S. App. at *3 n. 3 (quoting *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 92 (2d Cir. 2011), *aff'd*, 568 U.S. 85, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013)) (emphasis added). According to the *Already* Court, "[t]he breadth of the Covenant renders the threat of litigation remote or nonexistent' because [the court] could not envision a shoe that would be within Nike's trademark yet not protected by the covenant." 568 U.S. at 102.

The *Nursery Decals* covenant not to sue is reproduced below:

> NEAT PRINT for and on behalf of itself, its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities, hereby unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against NURSERY DECALS or any of its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities and all customers of each of the foregoing (whether direct or indirect), on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law in the United States relating to the MARKS based on the appearance of any of NURSERY DECALS' **current and/or previous clothing product designs**, and any colorable imitations thereof, regardless

- 14 -

of whether that clothing is produced, distributed, offered for sale, advertised, sold, or otherwise used in commerce before or after the Effective Date of this Covenant.

*Id* (emphasis added). The Fifth Circuit held that this language was also sufficient to render the plaintiff's declaratory judgment claims moot.

The Covenant Defendant proposes is virtually identical to both the *Already* and *Nursery Decals* covenants:

> Service 1st for and on behalf of itself, its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities, hereby unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against FSCU or any of its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities and all customers of each of the foregoing (whether direct or indirect), on account of any possible cause of action based on or involving trademark infringement, dilution, unfair competition, or false designation of origin under federal, state, or common law in the United States relating to the SERVICE 1ST Mark and any similar federal, state, or common law marks, based on the current and/or previous use of the FSCU Marks for the FSCU Goods and Services, regardless of whether such use occurs in commerce before or after the Effective Date of this Covenant.

Like the covenant in *Already* and *Nursery Decals*, the breadth of Defendant's Covenant "renders the threat of litigation remote or nonexistent." 568 U.S. at 102. As such, the result of this action should be the same as in *Already* and *Nursery Decals*.

Plaintiff's removal of the "current and/or previous" limitation from the *Already* and *Nursery Decals* covenants, as well as its addition of numerous irrelevant trademarks, render Plaintiff's proposed covenant far broader than the scope of the Letter or Plaintiff's complaint, which Plaintiff concedes controls this issue. *See* Frederick Decl., Ex. J (email from Plaintiff alleging without explanation that it "did not believe the scope of Service 1st's proposed [First

- 15 -

Draft] is sufficient to address the claims in Service 1st's March 14, 2025 letter or FSCU's declaratory judgment action."). Plaintiff's proposed covenant would also grant Plaintiff more from the covenant than it could achieve in this lawsuit, and could lead to drastically unfair and absurd results. For example, under Plaintiff's proposed covenant, Plaintiff could expand its brick-and-mortar locations, currently limited to Texas, to Defendant's home state of Pennsylvania—indeed, Defendant could install a "First Service" credit union right next door to Defendant's "Service 1st" credit union—and Defendant would not be able to challenge such use. While Plaintiff's proposed language impermissibly serves to capture claims "of a hypothetical or abstract character," Defendant's Covenant language is sufficient to guarantee that Defendant will not object to the "definite and concrete" uses by the Plaintiff that Defendant raised in the Letter – i.e., Plaintiff's "First Service" credit unions located in Texas. *See Life Ins. Co. of Hartford Conn.*, 300 U.S. at 240-41.

Simply put, under Supreme Court and Fifth Circuit precedent, the Covenant is sufficient to ensure that there is no "actual controversy." *Already*, 568 U.S. at 90-91; *Nursery Decals*, 2023 U.S. App. LEXIS 19826 at *2. The Court therefore lacks subject matter jurisdiction as a matter of law, and this case should be dismissed.

**V.    Conclusion**

In its complaint, Plaintiff acknowledges that Defendant's credit union activities are exclusively directed to Pennsylvania.  Plaintiff's only allegation related to Defendant's activities in Texas relates to Defendant's cease-and-desist letter, which is insufficient to confer personal jurisdiction as a matter of law. The Court should therefore dismiss this case for lack of personal jurisdiction.

- 16 -

Regarding subject matter jurisdiction, Defendant's proposed Covenant covers all previous and current uses of the subject trademark, even if such use occurs in the future, and it therefore parallels the allegations in Defendant's cease and desist letter and Plaintiff's complaint. This Court should therefore reach the same result as the Supreme Court in *Already* and Fifth Circuit in *Nursery Decals* and dismiss the Complaint for lack of subject matter jurisdiction.

Date: July 29, 2025

By: /s/*Grayson Thompson*
Grayson Thompson
State Bar No. 24138592
Federal ID No. 3884050
**REED SMITH LLP**
1221 McKinney Street, Suite 2100
Houston, TX 77010
Telephone: 713.469.3800
Facsimile:　713.469.3899
(Signed by Permission of Attorney-in-Charge)

Matthew P. Frederick (*applied pro hac vice*)
Jennifer C. Black (*applied pro hac vice*)
**REED SMITH LLP**
Three Logan Square
1717 Arch Street Suite 3100
Philadelphia, PA 19103
Tel: 215.851.8100
Fax: 215.851.1420

Seth B. Herring (*applied pro hac vice*)
*Attorney-in-Charge*
**REED SMITH LLP**
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Tel: 415.543.8700
Fax: 415.391.8269

- 17 -

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that all counsel of record who have appeared in this case are being served on this day of July 29, 2025, with a copy of the foregoing via CM/ECF Filing.

*/s/ Seth B Herring*

Seth B. Herring
